AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| United States of America | ) |
|---|---|
| v. | ) Case: 1:21-mj-00093 |
| | ) Assigned To : Faruqui, Zia M. |
| LEO CHRISTOPHER KELLY | ) Assign. Date : 1/16/2021 |
| | ) Description: Complaint w/ Arrest Warrant |
| | ) |
| | ) |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 6, 2021__ in the county of _____ in the _____ District of __Columbia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1752 (a)(1) and (2) | Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority |
| 40 U.S.C. § 5104(e)(2)(A), (C), and (G) | Violent Entry with Intent to Disrupt the Orderly Conduct of Official Business and Disorderly Conduct on Capitol Grounds |

This criminal complaint is based on these facts:

See attached statement of facts.

☑ Continued on the attached sheet.

_____
Complainant's signature

Michael J. McGillcuddy, Special Agent, FBI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone (specify reliable electronic means).

Date: 01/16/2021

2021.01.16 20:36:59 -05'00'
Judge's signature

City and state: Washington, D.C.

United States Magistrate Judge
Printed name and title

## STATEMENT OF FACTS

On January 6, 2021, your affiant, Michael J. McGillicuddy, was on duty and performing my official duties as a Special Agent with the Federal Bureau of Investigation's (FBI's) Washington Field Office (WFO). Specifically, I was assigned to the Shift 1 Operations Group, which was forward deployed to the vicinity of the United States (U.S.) Capitol upon WFO's Crisis Response Plan activation, tasked with investigating criminal activity in and around the Capitol grounds. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws. The Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the Capitol. On January 6, 2021, the exterior plaza of the Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the U.S. Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the U.S. House of Representatives and the U.S. Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the U.S. House of Representatives and the U.S. Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials. At such time, the certification proceedings still underway, the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts. Shortly thereafter, at approximately 2:20 p.m. members of the House and Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the U.S. Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the Capitol, including the danger posed by individuals who had entered the Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building

had been secured.  Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

On January 6, 2021, at approximately 9:18 p.m. (i.e., the same night of the above-referenced activities), a self-described non-profit Internet service emphasizing traditional Judeo-Christian principles posted an exclusive video interview with an individual whom the reporter identified as "Leo Kelly," and whom I later confirmed to be LEO CHRISTOPHER KELLY. In its description of the video, the website described KELLY as "… one of the first men to breach the Capitol building and go inside with dozens of others." During the interview, KELLY acknowledged being inside the U.S. Capitol for between 30 and 60 minutes.  KELLY stated that, when encountering law enforcement, he and others were "… mostly respectful, as respectful as you can be when you're kind of really pushing in on somebody's space like that." KELLY further stated that he got all the way to the U.S. Senate floor and said a prayer (i.e., with others). Specifically, the interview includes approximately 17 seconds of video footage that KELLY likely filmed with his mobile telephone from the dais of the Senate floor during the insurrection. While the footage was played during the interview, the reporter said "… you shot some video in there," to which KELLY acknowledged, "Yeah." The reporter then continued, "… we're going to show some of that." KELLY's footage included desks that were open and in disarray and other persons involved in the insurrection. The area of the Senate floor that KELLY filmed appeared to be overtaken as there were no members of the Senate present and no significant law enforcement presence at that time. Upon being asked how he felt about what happened that day, KELLY stated that he felt "conflicted," as "… you violate someone else's space … force your way into a building … in some ways that really feels wrong … but, … that [space] really does belong to us." KELLY continued, "… that should only be an absolute last resort … maybe we shouldn't have done that … it's just, you come to the end of your rope … and you get swept up in a movement … and there's a bunch of people running and doing this … it's not the logical mind that's working anymore … you're just reacting to things and, finally, there's a chance that you can be heard … we took that chance … God will judge us … perhaps I did something wrong … I tried to be as respectful as I could while I was in there, you know, while still saying what I felt needed to be said."

On January 8, 2021, I performed a Google image search for "Leo Kelly" and located KELLY's profile picture at a former employer located in Cedar Rapids, Iowa. Accordingly, I positively identified the individual in the profile picture as one in the same as the subject of the above-referenced video interview. I then performed public records searches using KELLY's name and the name of his former employer to fully identify KELLY, a resident of Cedar Rapids. Based on KELLY's driver's license photograph obtained from the Iowa's Department of Transportation, I further confirmed that KELLY was the subject of the above-referenced interview.

On January 11, 2021, The Gazette, a daily print newspaper and online news source published in Cedar Rapids, released a news article on its website, entitled "Cedar Rapids man says

he entered US Capitol with mob but was not violent: 'That is not who I am.'" The article's reporter had spoken to KELLY earlier that same day.  Among other comments, KELLY told the reporter, "'If the FBI or whoever calls me — I mean, they know where to find me, I'm sure — I'll talk to them,' [KELLY] said. 'I understand there could be consequences for what happened and I will accept those and deal with them.'"

On January 14, 2021, the FBI's Cedar Rapids Resident Agency was contacted by a Deputy United States Marshal and acquaintance of KELLY's. The Deputy United States Marshal advised that KELLY had contacted him subsequent to the above-referenced events at the U.S. Capitol (i.e., as KELLY was driving back to Iowa). Specifically, KELLY said that he would turn himself in if an arrest warrant was issued for him.

Based on the foregoing, your affiant submits that there is probable cause to believe that KELLY violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant submits there is also probable cause to believe that KELLY violated 40 U.S.C. § 5104(e)(2)(A), (C), and (G), which makes it a crime to willfully and knowingly (A) enter or remain on the floor of either House of Congress or in any cloakroom or lobby adjacent to that floor, in the Rayburn Room of the House of Representatives, or in the Marble Room of the Senate, unless authorized to do so pursuant to rules adopted, or an authorization given, by that House; (C) with the intent to disrupt the orderly conduct of official business, enter or remain in a room in any of the Capitol Buildings set aside or designated for the use of— (i) either House of Congress or a Member, committee, officer, or employee of Congress, or either House of Congress; or (ii) the Library of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Date: January 16, 2021                                            Respectfully submitted,

_____
Special Agent Michael J. McGillicuddy
FBI Washington Field Office

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 16th day of January 2021.

2021.01.16
20:39:38
-05'00'

_____
ZIA M. FARUQUI

UNITED STATES MAGISTRATE JUDGE